## Pinebrook Foundation, Inc. *v.* Shiffer, Appellant.

Argued September 29, 1964. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*John J. Pentz, Jr.,* with him *Russell L. Mervine,* for appellants.

*Jack C. Briscoe,* with him *James T. Kitson,* for appellee.

OPINION BY MR. JUSTICE COHEN, January 5, 1965:

This is an appeal from the lower court's dismissal of a petition to dissolve an injunction entered in 1956 restraining the collection of taxes.

In 1948, appellee, Pinebrook Foundation, Inc. (Pinebrook), requested appellants, the Commissioners of Monroe County (Commissioners), to exempt its real estate from taxation under "The Fourth to Eighth Class County Assessment Law," Act of May 21, 1943,

P. L. 571, §§101-706, 72 P.S. §§5453.101-5453.706. The Commissioners refused this request, and, in 1950, Pinebrook filed a complaint in equity praying that a permanent injunction be issued against Commissioners and the tax collector and assessor of the municipality in which the property in question is located restraining the collection of taxes. In 1956 the following final decree was entered: "1. That an injunction as prayed for be issued against the defendants restraining them from collecting taxes levied against the said property for the year 1948 or for any year thereafter, so long as the title to said property remains under the condition under which it is now held and is used in the manner and for the purposes it is now held and used." The decree was based upon extensive findings of facts followed by the conclusion "That Pinebrook Foundation, Inc. is a nonprofit corporation and a purely public charity within the meaning of the Constitution of Pennsylvania (Article IX, §1) and the Act of May 21, 1943, P. L. 571, Article II, §202 (72 P.S. §5453.202), and the annexed grounds herein involved are necessary for the occupancy and enjoyment of the same," and that, therefore, the land in question was exempt from taxation.

In 1963, Commissioners filed a motion to dissolve the injunction on the grounds that (1) under the rule of *Y.M.C.A. v. Reading*, 402 Pa. 592, 167 A. 2d 469 (1961) where we held "that, absent a challenge to the constitutionality of a statute or of official action thereunder, equity has no jurisdiction to restrain the collection of taxes," the court of equity in this case no longer had jurisdiction over the matter, (2) under the facts found by the lower court to have existed at the time of the decree Pinebrook had not met the burden of showing that it was within the exemption, and (3) additional improvements had been added to the property of Pinebrook encompassed in the perma-

nent injunction. Pinebrook responded that (1) the *Y.M.C.A.* rule had only prospective effect and, therefore, was no basis for attacking the decree entered five years before, (2) the question of whether Pinebrook had met its burden of proof was res judicata, and (3) Commissioners' averments of improvements were immaterial and insufficient to warrant dissolution of the decree.

In our view of the case the jurisdictional question is dispositive.[1] The lower court decided that the rule laid down in the *Y.M.C.A.* case was prospective only and that, therefore, a removal of the 1956 injunction could be obtained only if Commissioners proved that the circumstances surrounding the realty in question had changed sufficiently to warrant the loss of the statutory exemption. In our opinion the lower court was in error; for two reasons it must terminate its jurisdiction over this matter.

First, although in 1956—before the *Y.M.C.A.* case— equity might properly have exercised its jurisdiction to restrain the collection of taxes for the years preceding the decree, it exceeded its power when it framed its decree so as to extend its jurisdiction over the question into the future[2]. In 1956, the lower court

---

[1] It must be noted at the outset that Commissioners had no practical alternative to going into equity in 1963 to ask that the 1956 injunction be lifted. The only other course raised the threat of contempt. If Commissioners had simply followed the governing tax assessment statute, supra, and had decided that the property in question was taxable, tax collection would have been initiated whether or not Pinebrook appealed the decision of Commissioners under the statute. Act of May 21, 1943, P. L. 571, as amended, January 18, 1952, P. L. (1951) 2138, §7, 72 P.S. §5453.704. In that event, the defendants under the 1956 injunction might have been found in contempt.

[2] We are aware that in the past we have affirmed decrees restraining tax collection which were very similar in scope to the one here in question. *Barnes Foundation v. Keely*, 314 Pa. 112,

merely found that Commissioners had erred in their determination of the tax consequences of the facts surrounding the property in question. However, the court not only corrected the error but it also, as a practical matter, told Commissioners that before they could ever again proceed under the taxing statute as though the realty in question were taxable they would be required to demonstrate in equity that they were not in error again. We fail to perceive, in this case, a reason which would support the exercise of such power on the part of equity. Indeed, a consideration of the specific statute which regulates the taxation of the property in question and the relationship that it creates between the taxing authorities and the courts leads us to the conclusion that equity is not authorized to exercise such power. Clearly, the statute does not direct that Commissioners must demonstrate in court the propriety of their determination before they may proceed with their statutory duties. It is quite the contrary. The tax itself may be collected, subject to refund, before its correctness need be proven in court. Further, neither the statute nor any rule of law or reason suggests that merely because the tax authorities err with respect to a certain subject the relation between the administrative and judicial authority is thereby reversed—converting a statute which provides for subsequent judicial review into one which requires prior judicial approval. Like many other administrative bodies, the kind of action that the

171 Atl. 267 (1934) ; *Y.M.C.A. v. Reading*, 402 Pa. 592, 167 A. 2d 469 (1961) ; *White v. Smith*, 189 Pa. 222 (1899). We have also affirmed decrees of the scope we now think is proper. *Pittsburgh, Allegheny and McKees Rocks Ry. Co. v. Township of Stowe*, 252 Pa. 149, 97 Atl. 197 (1916). But in all of these cases we were concerned only with equity's jurisdiction to enter *any* decree. Here, we are scrutinizing the question of the *proper scope* of a decree.

tax authority takes with respect to a certain subject matter within its jurisdiction depends upon the myriad forms assumed by the factual context of the matter. Of necessity, it must frequently be a close question of whether there was error. If, because it once erred, the agency were prohibited from acting again with respect to a certain matter without prior judicial approval there would be a grave decrease in the utility of the administrative process and a violation of the legislative intention to place certain matters, initially, at least, within the judgment of the administrative agency with its own peculiarly adapted timing, procedure, and expertise—not to mention the exceedingly increased burden upon the judiciary. It is basic and salutory hornbook law which provides that "[w]here a public officer essays to exercise the jurisdiction conferred upon him, his errors, although subject to subsequent correction, cannot be enjoined as an arbitrary exercise of his authority" and "[p]ublic officers or boards will not be restrained from acting in the fulfilment of their duties as such on the mere supposition that they will act wrongfully or will not follow the law." 28 Am. Jur. Injunctions §176 (1st ed.), cf. *Adams v. Nagle,* 303 U.S. 532, 58 S. Ct. 687 (1938), *Aircraft & Diesel Corp. v. Hirsch,* 331 U. S. 752, 67 S. Ct. 1493 (1947).

There is a second reason why it was improper for the lower court to refuse to terminate its jurisdiction over this matter. In *Y.M.C.A. v. Reading,* supra, we held[3] that absent a question of constitutionality, the

---

[3] There is some suggestion in the lower court's opinion and appellee's brief that this statement was dicta because in the particular case of *Y.M.C.A.* we affirmed in part and reversed in part the lower court's equity decrees, thereby recognizing equity's jurisdiction. The disposition of the *Y.M.C.A.* case was made upon the decrees of the lower court rather than forcing the parties to relitigate the matter under the statutory procedure because we

statutory procedure for reviewing the alleged errors of the taxing authorities must be pursued and that equity had no jurisdiction to interfere in the legislatively prescribed process. It would seem, therefore, that the *Y.M.C.A.* rule required the lower court to terminate its jurisdiction. But Pinebrook and the lower court assert that the *Y.M.C.A.* rule was prospective only and, therefore, has no effect on the decree entered five years before. This argument is fallacious. We made the *Y.M.C.A.* rule prospective because we were of the opinion that the parties in that case were justified in their reliance upon their right to litigate in equity the merits of the taxability question. Therefore, we disposed of that case on the basis of the proceedings in equity rather than force the parties to begin again under the statutory procedure. But in this case, by holding that equity no longer had jurisdiction of the matter, we are not defeating justifiable reliance. The present tax status of the property in question has not been litigated. Therefore, the *Y.M.C.A.* rule applies to prohibit equity's jurisdiction or, in this case, to terminate it.

Because of the general principles which have always guided the relationship between equity courts and legislatively prescribed administrative processes and because of the rule of the *Y.M.C.A.* case, which, in fact, is based on these same principles, the tax authorities should now be free to proceed with respect to Pinebrook according to the statute and without equity's interference. The statute sufficiently protects Pinebrook.

---

felt that the parties were not unjustified in their belief that equity had jurisdiction. But the mere fact that the rule is made prospective out of fairness to the parties does not make it dicta. Were this not true a court could never develop its rules of law and at the same time take cognizance of justifiable reliance on prior rules of law. Such a result would hamstring the orderly development of the law.

Accordingly, the order dismissing Commissioners' petition to dissolve is vacated and the case remanded with directions to amend[4] the 1956 decree to read: "That an injunction be issued against defendants restraining them from collecting taxes levied against said property for the years preceding and including 1956, the date of this decree."

Each party to bear own costs.

---

[4] It is true that technically speaking, Commissioners sought dissolution of the decree rather than amendment. But this does not make an amendment rather than dissolution inappropriate. Under Rule 1531(c) of our Rules of Civil Procedure, a motion to dissolve necessarily includes a motion for modification. 2 Goodrich-Amram §1531(c)-1. Moreover, our amendment would have the same effect as dissolution, i.e., removal of the question from the jurisdiction of equity.