Abbotts Dairies, Inc. et al., Appellants, *v.*
Philadelphia.

Argued May 5, 1969. Before Bell, C. J., Jones, Cohen, Eagen, O'Brien, Roberts and Pomeroy, JJ.

*Roland Morris,* with him *Duane, Morris & Heckscher,* for appellants.

*Levy Anderson,* First Deputy City Solicitor, with him *Thomas A. Matthews,* Assistant City Solicitor, and *Edward G. Bauer, Jr.,* City Solicitor, for City of Philadelphia et al., appellees.

Opinion by Mr. Justice Roberts, November 11, 1969:

Effective January 1, 1953, the City of Philadelphia enacted a Mercantile License Tax upon persons and

companies engaged in certain business activities within the city. This tax was authorized by the Sterling Act, Act of August 5, 1932, P. L. 45, §1, as amended, 53 P.S. §15971. The appellants, however, believed that the imposition of the tax as to them was a violation of the exemption for state licensed companies contained in the Sterling Act. Therefore, in early 1953 they successfully sought a perpetual injunction prohibiting the city from taxing them under the Mercantile License Tax. This injunction continued in full force and effect until 1968, when it was modified at the request of the city.

This modification was apparently precipitated by this Court's decisions in *Y.M.C.A. v. Reading,* 402 Pa. 592, 167 A. 2d 469 (1961), *Pinebrook Foundation, Inc. v. Shiffer,* 416 Pa. 379, 206 A. 2d 314 (1965), and *Bell Telephone Co. v. Philadelphia,* 421 Pa. 14, 218 A. 2d 727 (1966). These decisions answered the question whether "an erroneous interpretation of a taxing statute by a tax official supports his being prohibited from again enforcing that taxing statute against the decree winner." We concluded that "such action may not be proscribed." *Bell Telephone Co. v. Philadelphia,* supra at 16.

It is conceded by all parties to this litigation that the injunction the appellants obtained in 1953 falls within the prohibited class of injunctions established in the *Y.M.C.A.-Pinebrook Foundation, Inc.-Bell Telephone Co.* line of cases. Therefore, the decision by the court below to modify the 1953 injunction is essentially correct. The only issue presented for our consideration is whether the injunction should have been modified as it was—to only enjoin the collection of the Mercantile License Tax through the end of 1953—or whether the injunction should have been modified so as not to affect those tax years *prior* to the city's challenge of the

decree and its initiation of the modification proceedings in 1967.

The city argues that the modification of the decree should be completely retroactive. To support this proposition it cites both the *Bell Telephone* and *Pinebrook Foundation* cases. In both of these, the modification of the decree resulted in completely retroactive application of the rule against enjoining the collection of taxes. In opposition, appellants cite this Court's disposition in the original decree modification case, *Y.M.C.A. v. Reading*, and certain equitable principles which should be given effect in a situation such as this one. Specifically, appellant quotes from *Y.M.C.A.*: "Because of the parties' reliance upon past practice and because of the time lapse that would impose an inequitable hardship on the litigant, we shall determine the present controversy . . . ." 402 Pa. at 598, 167 A. 2d at 472.

It is our view that appellants' argument *must* be upheld. Since in these cases of necessity we must give effect to equitable principles (as well as this Court's decision as to injunctions in tax cases), we believe it is reasonable that the city be permitted to assert tax liability only as to those years after which appellants were put on notice that the original decree might be modified. To do otherwise would tear down some of the most basic foundations of our jurisprudence—the requirements of timely appeals and of finality of judicial adjudications.

Here the city and appellants litigated the Sterling Act exemption in *1953*, the city *failed* to appeal from that determination, and the companies *relied* on the exempt status for thirteen years (as did the city)—during which time mergers took place, business records were destroyed and business decisions were made on the basis of a final judicial adjudication upon which

the taxpayers had every right to rely. Then, in 1967, the city chose to reopen the matter and attack the 1953 decree. Under these circumstances, to allow the city now to reach all the way back to 1954 and assess its Mercantile License Tax would create a hardship on the appellants and would upset the public policy goals of finality of litigation, and justifiable reliance on our Court decisions. It certainly would far outweigh any good which might be derived from such a move.

This Court *has* indeed declared that injunctions in tax cases such as this one are procedurally improper. But we did not do so until 1966. It hardly seems necessary for the implementation of such a policy that those who relied on such unappealed injunctions prior to our decision in *Pinebrook* now suddenly be assessed with retroactive taxes from which they were judicially declared to be immune. The city as an aggrieved party had the right to appeal, which it did not pursue. To sustain the city's retroactive tax claims is tantamount to ignoring the whole area of jurisprudence which demands timely appeals and to granting the city in reality an appeal nunc pro tunc sixteen years later. Such a holding would place the Court in the role of parens patriae of the taxing-body litigant. If this is a proper role for the Court to assume for a public taxing body, why not for all litigants? It seems sufficient to satisfy our purposes that such tax injunctions only be subject to modification at a date after the parties to such decrees were put on notice that their validity was in doubt.

Therefore, we conclude that the action of the court below in modifying the injunction to only apply to the years preceding and including 1953 does not comport with the equitable principles inherent in any such proceeding. For that reason, we modify the decree so that it reads: "That the City of Philadelphia is en-

joined from enforcing or attempting to enforce any and all provisions of the Ordinance against Abbotts Dairies, Inc.; Borden's Ice Cream Company, division of the Borden Company; Breyer Ice Cream Company; Penn Dairies, Inc.; Philadelphia Dairy Products Co. Inc.; Potts Ice Cream Company; Quaker Ice Cream Company; Supplee-Wills-Jones Milk Company for the years preceding and including 1965."

Decree affirmed as modified. Each party to pay own costs.

———

DISSENTING OPINION BY MR. JUSTICE COHEN:

The majority adheres to this Court's decisions in *Bell Telephone Company of Pennsylvania v. Philadelphia*, 421 Pa. 14, 218 A. 2d 727 (1966); *Pinebrook Foundation Inc. v. Shiffer*, 416 Pa. 379, 206 A. 2d 314 (1965), and *Young Men's Christian Association v. Reading*, 402 Pa. 592, 167 A. 2d 469 (1961), as stating the law in this area. It also concedes that the injunction obtained by appellants in 1953 was overbroad and that the decision by the court below to modify the 1953 injunction is "essentially" correct. The only issue on which there exists a difference of opinion is whether the City should assess taxes beginning with 1954 or 1967.

The majority has selected the latter date as the proper one pursuant to "equitable" principles. That is, because the City failed to appeal the 1953 determination and because appellants relied on that determination for thirteen years, it is reasonable to assert tax liability only from 1967. Such a decision, we are told, is necessary to reinforce the principles of timely appeals and finality of judicial adjudications.

It is certainly anomalous to grant appellants the benefit of equitable principles when they have not acted equitably throughout the period in question. In its

1953 complaint Abbotts said "defendants are without authority to require plaintiffs to secure licenses, or to pay any taxes on that part of plaintiffs' business which comprises the manufacture and sale of ice cream, and which is conducted pursuant to the aforesaid state licenses." Later, in its prayer for relief, appellants asked the court to restrain the City from levying or collecting "any mercantile license fee and mercantile license tax from the plaintiffs, or any of them with respect to that portion of the business of any plaintiff which is subject to the payment of license fees to the Commonwealth of Pennsylvania under the aforesaid Milk Control Law and Ice Cream Law." Clearly, the plaintiffs in that suit realized that only part of their business was exempt from the City tax. The injunction, however, stated that the City "is hereby enjoined from enforcing any and all of the provisions of the Philadelphia Mercantile License Tax Ordinance . . . against any of the herein enumerated complainants." Thus, Abbotts knew that the decree was overbroad, and it took advantage of the court's error for thirteen years without informing the court or the City of that error. Perhaps Abbotts had no legal duty to report that error, but Abbotts is certainly in no position to claim the benefit of equitable principles. Abbotts knew through all these thirteen years that it should have paid taxes on its nonlicensed activity, and surely it is not deserving of this Court's sympathy.

As to reliance, appellants contend that record destruction and merger policies make it "literally impossible" to assemble mercantile tax information. Perhaps that is so, but appellants' self-serving assertions should not decide the issue. The taxing authority should at least be given the opportunity of studying appellants' records to determine whether the proper tax can be computed. If the City imposes a tax that

is arbitrary and capricious in appellants' eyes, such a determination can be appealed, and our courts then, on the basis of concrete evidence, can decide the validity of the City's action. There is now no evidence of such impossibility, and such an order by this Court would cause appellants no irreparable harm.

Certainly the public and those involved in the administration of justice have an interest in the finality of adjudication. But to be weighed against that is the great public interest in having available to it that tax revenue properly due. (It must be remembered that the majority concedes this money was properly owed to the City and would have so ordered in 1953.) With cities so in need of additional funds, the interest in finality of adjudication should not automatically be given precedence.

Finally, this case is factually and legally indistinguishable from *Bell Telephone,* supra. In that case the court below held that its original decree, issued in 1953, was in error and modified the decree so as to restrain the collection of the City tax only for years up to and including 1953. This Court affirmed the modified decree. The opinion gave no weight to the fact that the City of Philadelphia had not appealed the 1953 decree and did not consider relevant any reliance by *Bell.* The reasons stated by the majority in this case are not cause enough to refuse to follow *Bell Telephone* which is directly on point.

The decree should be affirmed so that the City has an opportunity to investigate appellants' records and determine whether the proper amount of tax due can be ascertained.

I dissent.

Mr. Justice EAGEN and Mr. Justice O'BRIEN join in this dissent.