620 A.2d 614

TRANSCONTINENTAL GAS PIPE LINE
CORPORATION, Petitioner

v.

COMMONWEALTH of Pennsylvania, Respondent (Two Cases).

Commonwealth Court of Pennsylvania.

Argued Nov. 20, 1992.

Decided Jan. 22, 1993.

Lowell S. Thomas, Jr., for petitioner.

Clinton G. Smith, Jr., Deputy Atty. Gen., for respondent.

Before DOYLE and SMITH, Judges, and NARICK, Senior Judge.

NARICK, Senior Judge.

Transcontinental Gas Pipe Line Corporation (Transco) appeals from the orders of the Board of Finance and Revenue (Board) that sustained the imposition by the Department of Revenue (Department) of utilities gross receipts tax for the calendar year 1984 in the amount of $102,541.00, plus penalty and interest on Transco. We affirm, as modified.

Transco is a Delaware corporation having its principal office in Houston, Texas. Until 1975, Transco did not file gross receipts tax reports, believing that all its receipts were exempt by virtue of the "sale for resale" exemption contained in Section 1101(a) of Article XI the Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, as amended, 72 P.S. § 8101(a).[1]

In 1975, Transco received a form notice from the Department, advising that it should file a utilities gross receipts tax report, which Transco did, claiming the exemption. The Department conducted an audit of Transco's 1984 report, requesting Transco furnish information about the percent of gas used internally or lost by each of its customers, i.e., gas which was not resold. Transco did not have this information, but Transco requested that each of its Pennsylvania customers furnish the information to the Department. Upon receipt of

1. Section 1101(a) of the utilities gross receipts tax which was applicable in 1984 stated:
(a) General Rule.—Every railroad company, pipeline company, . . . hereafter incorporated or organized by or under any law of this Commonwealth, or now or hereafter organized or incorporated by any other state, . . . and doing business in this Commonwealth . . . shall pay to the State Treasurer, through the Department of Revenue, a tax of forty-four mills upon each dollar of the gross receipts . . . from the sale of gas, except gross receipts derived from sales to any municipality owned or operated public utility and except gross receipts derived from sales for resale. . . . (emphasis added).

this information from the various customers,[2] the Department determined the amount of gas purchased from Transco by its Pennsylvania customers, which these customers did not resell and upon which Transco would be taxed. The Department settled Transco's 1984 report, in the amount of $102,451.00. Transco appealed, requesting that its 1984 tax report be resettled. The Department resettled the 1984 report, sustaining all of the original tax and adding a penalty in the amount of $1,275.00 for the late filing of the report.

Transco separately appealed the tax and penalty components of the resettlement to the Board of Finance and Revenue. The Board refused both of Transco's petitions. On March 6, 1989, these appeals were consolidated for review before this Court.[3]

### "SALE FOR RESALE"

On appeal,[4] Transco argues that all of its sales were for resale and, therefore, exempt from the utilities gross receipt tax. Transco submits that all the gas it sells to its public utility customers is sold to the customer for resale purposes alone.

A statute exempting persons from taxation must be strictly construed. Furthermore, the taxpayer bears the bur-

2. Certain customers did not respond and the Department imposed a percentage calculation average to determine the amount of gas that was not "sold for resale."

3. Substantial additional taxes have been assessed to Transco for the years 1985 through 1990. Petitions for resettlement are pending for these years and are also subject to review by this Court at 36 F.R. 1989. However, the utilities gross receipts tax will not be a continuing revenue source for the Commonwealth beyond 1991, unless the General Assembly reverses recent legislation. Effective January 1992, natural gas companies are subject to tax only on sales to the general public. See Section 28 of Act 22 of August 4, 1991, P.L. 97, 72 P.S. § 8101.

4. Our scope of review of determinations of the Board of Finance and Revenue is governed by Pa.R.A.P. No. 1571. Although this Court hears such cases in its appellate jurisdiction, 42 Pa.C.S. § 763, this Court functions essentially as a trial court and we must consider a record made by the parties specifically for this Court rather than one certified from the proceedings below and resolve issues of fact on which the parties disagree. Picpa Foundation for Education & Research v. Commonwealth, 143 Pa.Commonwealth Ct. 291, 598 A.2d 1078 (1991).

den of proving that its receipts fall within the exemption. *Commonwealth v. Peters Orchard Co.*, 511 Pa. 465, 515 A.2d 550 (1986). Transco's taxable receipts were established using statements from its customers. Because the customers reported that a percentage of the gas the customers received was not resold, not all of Transco's receipts fell within the exemption of "sales for resale." [5] Transco suggests that this Court should interpret the language in the statute to allow the party selling the gas to characterize its sales as exclusively for resale. However, because substantial evidence supports the finding that a certain percentage of the customers of Transco's gas was not resold, Transco did not meet its burden of proving that it is exempt.

## COMMERCE CLAUSE

■ Next, Transco argues that the utilities gross receipts tax violates the commerce clause of the United States Constitution which provides that "Congress shall have Power ... To regulate Commerce ... among the several states...." Art. I, § 8. The commerce clause exists as a "negative" or "dormant" limitation upon the power of the states, including the states' power to tax, even in the absence of implementing legislation by Congress. *Quill Corp. v. North Dakota*, —— U.S. ——, ——, 112 S.Ct. 1904, 1911, 119 L.Ed.2d 91 (1992).

■ However, this does not mean that interstate commerce is immune from state taxation. In *Complete Auto Transit Inc. v. Brady*, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977), the United States Supreme Court made it clear that the states can require interstate commerce to "pay its own way." States must satisfy four conditions when taxing inter-

---

5. Transco argues that because the gas its customers purchase is commingled with gas from other sellers like Transco, it is impossible for its customers to accurately estimate the amount of Transco gas which was not resold.

Transco also contends that it should not be taxed for gas which was lost by its customers. Transco introduced no evidence of commingling or "shrinkage" and, therefore, it did not meet its burden of proving it is exempt. While these arguments are not without merit, Transco failed to introduce any evidence to support these claims.

state commerce. These conditions require a state tax on interstate commerce to: 1) be levied only upon entities which have a substantial nexus with the state; 2) be fairly apportioned; 3) not discriminate against interstate commerce; and 4) be fairly related to the services provided by the state. *Id.* at 279, 97 S.Ct. at 1079. Transco asserts that the utilities gross receipts tax has subjected it to the risk of a "cumulative" tax burden because of its "interstate character," citing *Ott v. Mississippi Valley Barge Line Co.*, 336 U.S. 169, 174, 69 S.Ct. 432, 434–35, 93 L.Ed. 585 (1949). While Transco does not deny that its company has sufficient nexus with Pennsylvania, it does assert that the tax is not fairly apportioned, discriminates against interstate commerce, and is not fairly related to the services provided by the Commonwealth.

## A. Apportionment

*Complete Auto* requires a valid tax on interstate commerce to be reasonably apportioned to the value of the in-state activities upon which the tax is imposed. Fair apportionment is comprised of two parts:

> The first, and ... obvious, component of fairness in an apportionment formula is what might be called internal consistency—that is, the formula must be such that, if applied by every jurisdiction, it would result in no more than all of the unitary business' income being taxed. The second and more difficult requirement is what might be called external consistency—the factor or factors used in the apportionment formula must actually reflect a reasonable sense of how income is generated.

*Container Corp. of America v. Franchise Tax Board*, 463 U.S. 159, 169, 103 S.Ct. 2933, 2942, 77 L.Ed.2d 545 (1983).

To be internally consistent, a tax must be structured so that if every state were to impose an identical tax, no multiple taxation on the same item of income would result. *Complete Auto.* "Thus, the internal consistency test focuses on the text of the challenged statute and hypothesizes a situation where other states have passed an identical statute." *Goldberg v. Sweet*, 488 U.S. 252, 109 S.Ct. 582, 102 L.Ed.2d 607 (1989).

In *Goldberg*, a taxpayer challenged an Illinois tax on interstate telephone calls, arguing that the tax was not apportioned and thus, subjected interstate telephone calls to multiple taxation. However, the Supreme Court concluded that the challenged tax was internally consistent because Illinois taxed only those interstate telephone calls which were charged to an in-state service address. Consequently, if every state adopted a tax identical to Illinois, only one state would tax each interstate telephone call and no multiple taxation would result.

■ Transco argues that because it pays Louisiana's "pipeline franchise tax," 47 La.Rev.Stat. §§ 1031–1040, which is based on Transco's gross receipts, that there is multiple taxation because Pennsylvania's gross receipts are part of Louisiana's base. We do not agree.

The General Assembly uses only Pennsylvania sales as the tax base for imposing the gross receipts utilities tax. No other state can tax these receipts. Further, Louisiana apportions its tax. Other states, like Louisiana, may include all gross receipts in the tax base but must then apportion, using some rational basis to account for this overreaching and thus, rationally relate all gross receipts to the local activity. While there is no longer a requirement that taxpayers affirmatively prove that they were subjected to multiple taxation, *see Tyler Pipe Industries, Inc. v. Washington State Department of Revenue*, 483 U.S. 232, 107 S.Ct. 2810, 97 L.Ed.2d 199 (1987), we hold that Pennsylvania's tax is internally consistent.

■ Next, we shall consider whether the tax is externally consistent, i.e., whether the Commonwealth has taxed only that portion of the revenues from interstate activity which reasonably reflects the in-state component of the activity being taxed. *Goldberg*, 488 U.S. at 262, 109 S.Ct. at 589. The factors used in an apportionment formula must actually reflect a reasonable sense of how income is generated. Because Pennsylvania's tax is not apportioned, our inquiry is essentially a practical one which examines the in-state business activity that triggers the taxable event and the practical

or economical effect of the tax on the interstate activity. *Container Corp.*, 463 U.S. at 169, 103 S.Ct. at 2942.

In *Goldberg*, the Supreme Court found the unapportioned Illinois interstate telephone tax to be externally consistent, even if it did tax more than just the in-state component of an interstate telephone call because it contained a credit provision where taxpayers could credit taxes paid to other states against their Illinois tax liability. Transco argues that Pennsylvania's tax contains no credit provision and thus, the tax Transco pays to Louisiana under that state's pipeline franchise tax is not creditable against the Pennsylvania gross receipts tax liability. While Pennsylvania's tax does not have an apportionment formula or a credit provision, there is still external consistency because the activity taxed in Pennsylvania is a discretely local event. Pennsylvania's tax only taxes activities which are exclusively intrastate. Therefore, we hold Pennsylvania's tax is externally consistent.

### B. Discrimination Against Interstate Commerce

A state tax may not discriminate against interstate commerce. A tax statute is discriminatory on its face, when a clear distinction is made between in-state and out-of-state taxpayers, requiring the out-of-state taxpayers to shoulder the burden of a tax from which in-state interests are exempt. *American Trucking Associations v. Scheiner*, 483 U.S. 266, 107 S.Ct. 2829, 97 L.Ed.2d 226 (1987). Pennsylvania's gross receipt tax is not facially discriminatory because it is imposed upon both local and interstate commerce alike. However, Transco argues that the purpose or effect of the tax does discriminate against interstate commerce.

In *American Trucking*, Pennsylvania sought to impose flat taxes upon trucks using the Commonwealth's highways. One challenged tax was an annual axle tax on all trucks over a specified weight, assessed at $36 per vehicle axle. Opponents of the tax contended that even if owners of vehicles registered in Pennsylvania shared the burden of the tax with owners of vehicles based elsewhere (i.e., no facial discrimination), the taxes were nevertheless discriminatory because the tax actually imposed a much heavier per mile charge on out-of-state

vehicles. This argument was based on a fact that, on the average, Pennsylvania-based vehicles subject to the flat tax traveled about five times as many miles on Pennsylvania roads as did out-of-state vehicles. Consequently, the effect was to make out-of-state vehicle owners subject to a much higher charge per mile for travel in state.

Transco argues that the imposition of the utilities gross receipts tax on 100% of Transco's non-exempt sales to Pennsylvania customers likewise places a higher tax burden on interstate commerce then on local commerce.

However, we hold that *American Trucking* does not control here. The "applied" discriminatory effect found in flat fee cases like *American Trucking* does not exist in sales or gross receipts tax levies. The gross receipts tax operates upon each sale and is not related to the privilege of doing some threshold or a minimum business as would a license or flat fee levy. The tax due is directly related to the extent of the taxable occurrences in Pennsylvania. If no taxable receipts from sales are generated then no tax is due. Therefore, we hold Pennsylvania's gross utilities receipts tax is not discriminatory.

## C. Tax Related to Services Provided

A final condition of the *Complete Auto* test requires the tax to be reasonably related to the extent of the taxpayer's contact with the state. Transco asserts that its sole activity in Pennsylvania in 1984 was the sale and delivery of gas to public utility customers. Transco asserts that applying the tax to 100% of its alleged non-exempt gross receipts, in essence, requires Transco to shoulder more than its fair share of the state tax burden. Transco contends that it is unfair to require an interstate company, which has only limited activity within the state, to pay the tax at the same rate as a wholly in-state company, which maintains all of its assets, employees and capital in-state and thereby, partakes of a greater share of the state's protection and services. Again, we do not agree.

In 1984, Transco had over 800 miles of pipeline in Pennsylvania, had over 100 employees in Pennsylvania and received

almost one-quarter million dollars in receipts from sales in Pennsylvania. *See* Stipulation ¶¶ 20, 29, and 31. Transco's connections to Pennsylvania give it access to our courts, a trained work force, police, fire and other governmental services. We hold that Transco's benefits are fairly related to the amount of tax assessed.

## UNIFORMITY OF TAXATION

Article VIII, Section I of the Pennsylvania Constitution provides that, "All taxes shall be uniform, upon a same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." Pennsylvania applies the uniformity clause to all "species" of taxes. *Amidon v. Kane,* 444 Pa. 38, 279 A.2d 53 (1971).

The equal protection clause of the United States Constitution provides that a state may not impose more onerous taxes or other burdens on foreign corporations than on domestic corporations, unless the discrimination is rationally related to a legitimate state purpose. *Western & Southern Life Insurance Co. v. State Board of Equalization,* 451 U.S. 648, 101 S.Ct. 2070, 68 L.Ed.2d 514 (1981). The state uniformity clause and the United States Constitution's equal protection clause are analyzed in the same manner. *See Commonwealth v. Buckley,* 510 Pa. 326, 508 A.2d 281 (1986); *Leonard v. Thornburg,* 507 Pa. 317, 489 A.2d 1349 (1985). While it is true that absolute equality and perfect uniformity are not required in order to pass either clause, *Leonard,* a difference in classification must be "reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced will be treated alike." *Snider v. Thornburgh,* 496 Pa. 159, 166, 436 A.2d 593, 596 (1981) (*citing F.S. Royster Guano Co. v. Virginia,* 253 U.S. 412, 415, 40 S.Ct. 560, 561–62, 64 L.Ed. 989 (1920)). If there is no legitimate distinction between two classes, then the tax is unconstitutional if it imposes substantially unequal tax burdens on similarly situated taxpayers. *Leonard.* In other

words, an arbitrary distinction will not be tolerated. *Columbia Gas Transmission Corp. v. Commonwealth*, 468 Pa. 145, 360 A.2d 592 (1976).

 A taxpayer who alleges that the administration of a tax violates its right to be taxed uniformly with others in its class must affirmatively demonstrate "deliberate, purposeful discrimination in the application of the tax ... before constitutional safeguards are violated." *Fisher Controls Co. v. Commonwealth*, 476 Pa. 119, 125, 381 A.2d 1253, 1256 (1977). Transco asserts that the Department has failed to similarly assess all out-of-state gas companies selling gas in Pennsylvania and thus, creates an arbitrary burden upon those companies assessed.

The parties filed a joint supplemental stipulation of facts, listing three out-of-state gas suppliers to Pennsylvania utilities which the Department did not audit in 1984. The Department asserts that its active enforcement of this tax against domestic and foreign entities selling gas in Pennsylvania is documented and, in fact, has been litigated in *Hanley and Bird v. Commonwealth*, 139 Pa.Commonwealth Ct. 563, 590 A.2d 1382 (1991). Like all governmental agencies the Department lacks unlimited resources and is unable to audit even most of the reports it settles.

We have carefully reviewed the record and hold that Transco has not established any deliberate or purposeful discrimination in the Department's course of conducting its enforcement of this tax. The Department's failure to audit all out-of-state companies does not in itself make the settlement of this report based on audit nonuniform. Therefore, we hold that the assessment upon Transco did not violate equal protection.

## PROSPECTIVE APPLICATION

 Next, Transco argues that even if the utilities gross receipts tax is applicable to its Pennsylvania sales, any change in its tax liability should apply only on a prospective basis.

Transco's rates are subject to long-term contracts with its customers and are approved in advance by the Federal Ener-

gy Regulatory Commission (FERC). Transco's rates are not subject to change at its discretion. Transco must anticipate all taxes that it will incur before making rate requests to FERC. Anticipated taxes are then incorporated into its rate request. (February 21, 1992 Deposition of Frank J. Ferozzi at 27–32). Because Transco did not anticipate that it would become subject to the gross receipts tax before 1984, it did not incorporate this cost in its pre-1984 rate requests to FERC.[6] Because Transco received favorable reports since it began filing gross receipts tax reports in 1975, it is understandable that Transco would continue to believe that its sales were exempt.

In *Abbotts Dairies, Inc. v. Philadelphia,* 436 Pa. 131, 258 A.2d 634 (1969), the Pennsylvania Supreme Court held that, because of the hardship involved, Philadelphia's mercantile license tax could not be assessed retroactively against companies that had relied on their exemption status for 13 years. Citing equitable principles, the Court agreed that the companies could not be taxed because they had reasonably relied upon exempt status and this would create a serious hardship on them, which would far outweigh any good which might be derived from the assessment. Only after the companies were put on *notice* could the city assert tax liability. Because we do not wish to impede or discourage the conduct of commerce, the gross receipts tax liability will be applied only from 1984 onward, the date Transco had *notice* of the possibility that it was not exempt from the utilities gross receipts tax. The Department is thereby foreclosed from attempting to collect utilities gross receipts tax from Transco before 1984.

Accordingly, the orders of the Board of Finance and Revenue are affirmed as modified to apply only to prospective enforcement.[7]

6. FERC does not allow a taxpayer the opportunity to recoup unexpected expenses, such as state taxes, from its customers. *See generally* Natural Gas Act, 15 U.S.C. §§ 717–717z and *Arkansas Louisiana Gas Co. v. Hall,* 453 U.S. 571, 101 S.Ct. 2925, 69 L.Ed.2d 856 (1981).

7. Transco's only evidence that it timely filed the 1984 report is from the testimony of Transco's manager of state and local taxes who stated that the report was timely mailed but received by the Department late.

## ORDER

AND NOW, this 22nd day of January, 1993, the orders of the Board of Finance and Revenue in the above-captioned matter are hereby affirmed as modified to apply only to prospective enforcement. This order shall become final unless exceptions are filed within 30 days of the entry of the order pursuant to Pa.R.A.P. 1571(i).

(February 21, 1992 deposition of Jerry T. Moore at 18). Such evidence does not support a finding contrary to the Board's and, therefore, Transco is liable for the penalty and interest assessed by the Department for the late filing of its 1984 report.