# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

American Electric Power Service : 
Corporation, : 
                   Petitioner : 
                       : 
          v. : No. 861 F.R. 2013
                       : Argued: April 6, 2017
Commonwealth of Pennsylvania, : 
               Respondent : 

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
              HONORABLE JULIA K. HEARTHWAY, Judge
              HONORABLE DAN PELLEGRINI, Senior Judge

OPINION BY
SENIOR JUDGE PELLEGRINI             FILED: May 4, 2017

American Electric Power Service Corporation (AEPSC) seeks review of the Board of Finance and Revenue (Board) order finding that under the Tax Reform Code of 1971 (Tax Code),[1] it was subject to the utilities gross receipts tax (GRT) and that its sales of electricity to the Letterkenny Industrial Development Authority (LIDA) did not qualify for the resale exemption because LIDA was not a political subdivision.

The provision of the Tax Code that imposes a tax on gross receipts received from the sale of electric energy within the Commonwealth is Section

---

[1] Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. §§ 7101-10004.

1101(b), 72 P.S. § 8101(b).  That provision also specifies what entities are subject to the tax and what transactions are excluded from the gross receipt calculation.  It provides:

> **(b) Electric Light, Waterpower and Hydro-electric Utilities.--Every electric light company**, waterpower company and hydro-electric company now or hereafter incorporated or organized by or under any law of this Commonwealth, or now or hereafter organized or incorporated by any other state or by the United States or any foreign government and doing business in this Commonwealth, and **every limited partnership, association, joint-stock association, copartnership, person or persons, engaged in electric light and power business**, waterpower business and hydro-electric business in this Commonwealth, shall pay to the State Treasurer, through the Department of Revenue, a tax of forty-four mills upon each dollar of the gross receipts of the corporation, company or association, limited partnership, joint-stock association, copartnership, person or persons, received from:
>
> > (1) the sales of electric energy within this State, **except gross receipts derived from the sales for resale of electric energy** to persons, partnerships, associations, corporations or **political subdivisions** subject to the tax imposed by this subsection upon gross receipts derived from such resale. . . .

72 P.S. § 8101(b).  (Emphasis added.)

Under this provision, "electric light companies" and any person "engaged in [the] electric light and power business" are subject to the tax.  It also takes out of gross receipts sales for resale made to, among others, political subdivisions.  The Tax Code does not define the terms "electric light company,"

2

"electric light and power business" or "political subdivision." Now to the underlying facts as stipulated by the parties.

## I.

AEPSC, a New York corporation having its principal office in Columbus, Ohio, makes wholesale sales of electricity to customers located in Pennsylvania. It is not a public utility and does not hold a license from the Public Utility Commission (PUC), but AEPSC is regulated by the Federal Energy Regulatory Commission (FERC) as a wholesale seller of electricity. AEPSC first began making wholesale sales to LIDA in 2009.

LIDA was formed in 1997 under Pennsylvania's Economic Development Financing Law (EDFL)[2] when the Letterkenny Army Depot (Depot) was closed by Franklin County. An industrial development authority created under the EDFL is described as "a public instrumentality of the Commonwealth and a public body corporate and politic. . . ." Section 6(a) of the EDFL, 73 P.S. § 376(a). LIDA is governed by a 15-member board of directors appointed by the Franklin County Commissioners.

After LIDA was created, it assumed control of the Depot's Electrical Distribution System (EDS). It purchases power as a wholesale customer from a third-party wholesale supplier and then sells that electricity to the customers in the

---

[2] Act of August 23, 1967, P.L. 251, *as amended*, 73 P.S. §§ 371-386, retitled the Economic Development Financing Law by Section 1 of the Act of December 17, 1993, P.L. 490.

3

Cumberland Valley Business Park (Business Park), which LIDA developed, as well as to the Army for use in its retained industrial area.[3]  LIDA contracts with Allegheny Power to operate and maintain the EDS and bill LIDA's customers.

Two years before AEPSC began making wholesale sales to LIDA, Sandra Keller, AEPSC's Tax Counsel, had a telephone conversation with Gary Meredith of the Department of Revenue's Corporate Tax Division concerning the resale exemption to GRT and AEPSC's sales to municipalities.  Mr. Meredith told Ms. Keller that all sales made to municipalities should be reported on AEPSC's GRT Report as exempt unless the municipality itself consumes the electricity.  *See* 1101(b)(1) of the Tax Code, 72 P.S. § 8101(b)(1).  AEPSC then filed a GRT Report for 2010 reflecting its sales to LIDA and the Borough of Pitcairn (Pitcairn), another of its customers,[4] but claimed the gross receipts from those sales were non-taxable because they were sales for resale.  However, neither LIDA nor Pitcairn filed, reported or paid GRT on the electric energy they purchased from AEPSC in 2010.[5]

---

[3] Because LIDA purchases wholesale power, retail choice is not normally available to its customers.

[4] AEPSC reported gross receipts for resale in the amount of $640,705.90 from its sales to Pitcairn, and gross receipts for resale in the amount of $5,804,219.77 from sales to LIDA.  It is undisputed that 99.83% of the electric energy AEPSC sold to LIDA was resold to the Army and Business Park customers.

[5] LIDA and Pitcairn also did not file Corporate Net Income Tax returns or Capital Stock Tax returns for 2010.

The Department of Revenue (Revenue) found the resale exemption did not apply and assessed GRT on AEPSC's receipts from sales to LIDA, increasing AEPSC's 2010 GRT liability from $0 to $380,546.[6] AEPSC appealed the assessment to the Board of Appeals, and when it denied relief, appealed to the Board. AEPSC argued that it was not subject to GRT because it was not an electric light company as it did not sell electricity at retail, i.e., to end-use purchasers. In the alternative, AEPSC argued that it was entitled to the resale exemption for the sales for resale to Pitcairn and LIDA.

The Board found that AEPSC was subject to GRT, but found that it should have received the resale exemption for receipts from sales to the Borough of Pitcairn because Pitcairn is a municipality. However, the Board found AEPSC was correctly denied a resale exemption for sales to LIDA because LIDA was not a political subdivision and there was no evidence that LIDA reported GRT to the Commonwealth for the relevant time period. The Board then recalculated AEPSC's total GRT liability to $342,744. This appeal followed.[7]

## II.

AEPSC acknowledges that it would have been subject to GRT under Section 1101(b) of the Tax Code, 72 P.S. § 8101(b), if it had been allowed to sell

---

[6] AEPSC's total taxable gross receipts for 2010 was $6,449,926.

[7] In appeals from decisions of the Board, our review is de novo because we function as a trial court even though such cases are heard in our appellate jurisdiction. *Glatfelter Pulpwood Company v. Commonwealth*, 19 A.3d 572, 576 n.3 (Pa. Cmwlth. 2011) (*en banc*), *aff'd*, 61 A.3d 993 (Pa. 2013).

electricity prior to deregulation. It contends, however, that modifications to that provision by the Electricity Generation Customer Choice and Competition Act (Competition Act)[8] made it not subject to the tax.

By way of background, prior to 1996, only public utilities were allowed to sell electricity in Pennsylvania. In that year, the Competition Act was passed to encourage a more competitive marketplace for electricity sales and to provide cost savings to consumers. *Spectrum Arena Limited Partnership v. Commonwealth (Spectrum I)*, 921 A.2d 585, 586 (Pa. Cmwlth. 2007), *aff'd*, 983 A.2d 641 (Pa. 2009) (*Spectrum II*). It allowed consumers to purchase electricity from any supplier and have that electricity delivered by the local utility in their area. *Spectrum I*, 921 A.2d at 586. Companies that were not public utilities, like AEPSC, were now allowed to make sales of electricity.

Because this unbundling of the purchase of electricity from the distribution of electricity had tax revenue consequences, the Competition Act modified the Tax Code in several ways. To ensure that deregulation of electric utilities did not adversely affect overall tax revenues, the General Assembly also adopted the revenue-neutral reconciliation (RNR) formula as part of the Competition Act to recoup any losses caused by the restructuring of the electric industry. *Spectrum I*, 921 A.2d at 587 (citing 66 Pa. C.S. § 2810(a)). "By utilizing the RNR formula, the General Assembly ensured that the Commonwealth could

---

[8] 66 Pa. C.S. §§ 2801-2812.

6

collect the same level of revenue that was collected prior to the passage of the Competition Act." *Spectrum II*, 983 A.2d at 646.

## III.

## A.

One of the reasons AEPSC contends that it is not subject to GRT is that it is not an "electric light company" within the meaning of Section 1101(b) of the Tax Code because Section 2810(i) of the Competition Act provides that an "electric light company . . . shall be deemed to **include** electric distribution companies and electric generation suppliers."[9]  66 Pa. C.S. § 2810(i) (emphasis added).  Because it is a wholesale seller of electricity and does not sell electricity or related services to end-users, i.e., retail customers, AEPSC contends that it does

---

[9] The Competition Act defines an "electric distribution company" as a "public utility providing facilities for the jurisdictional transmission and distribution of electricity to retail customers. . . ."  66 Pa. C.S. § 2803; *see also Delmarva Power & Light Company v. Commonwealth*, 870 A.2d 901, 902 n.4 (Pa. 2005).  The term "electric generation supplier" is defined as:

> A person or corporation, including municipal corporations which choose to provide service outside their municipal limits except to the extent provided prior to the effective date of this chapter, brokers and marketers, aggregators or any other entities, that sells to end-use customers electricity or related services utilizing the jurisdictional transmission or distribution facilities of an electric distribution company or that purchases, brokers, arranges or markets electricity or related services for sale to end-use customers utilizing the jurisdictional transmission and distribution facilities of an electric distribution company. . . .

66 Pa. C.S. § 2803.

not fall within the definition of an "electric distribution company" or an "electric generation supplier," making it not subject to GRT.

However, by including electric distribution companies and electric generation suppliers as being subject to the tax, Section 2810(i) of the Competition Act expanded GRT to those kinds of electric businesses to insure that Section 1101(b) of the Tax Code applied to them, as well as the other entities engaged in the electric light business already subject to the tax. As our Supreme Court has explained:

> [I]t is widely accepted that general expressions such as 'including,' or 'including but not limited to,' that precede a specific list of included items are to be considered as words of enlargement and not limitation. Indeed, such a list of specific items is not meant to be exclusive of all items other than those specifically named. . . . In sum, the presence of such a term as 'including' in a definition exhibits a legislative intent that the list that follows is not an exhaustive list of items that fall within the definition; yet, any additional matters purportedly falling within the definition, but that are not express, must be similar to those listed by the legislature and of the same general class or nature.

*Department of Environmental Protection v. Cumberland Coal Resources, LP*, 102 A.3d 962, 976 (Pa. 2014). The use of the word "include" then is meant to illustrate that those types of entities were also included within the term "electric light company," not the only two types of entities subject to the tax.

**B.**

AEPSC also contends that it is not subject to GRT because it is not engaged in the electric light and power business. While Section 1101(b) of the Tax Code imposes GRT on sales of electric energy by electric light companies that are "engaged in electric light and power business," AEPSC argues that Section 2810(j) of the Competition Act modifies who is subject to GRT to only those entities engaged in the retail sale of electricity. That provision provides:

> Retail sales of electric generation, transmission, distribution or supply of electric energy, dispatching services, customer services, competitive transition charges, intangible transition charges and universal service and energy conservation charges and such other retail sales in this Commonwealth the receipts of which, if bundled, would have been deemed to be sales of electric energy prior to the effective date of this chapter shall be deemed sales of electric energy for purposes of section 1101 of the Tax Reform Code of 1971. **The phrases** "doing business in this Commonwealth" and "**engaged in electric light and power business,** waterpower business and hydroelectric business in this Commonwealth," **as such terms are used in section 1101(b) of the Tax Reform Code** of 1971 and in this chapter, shall be **construed to** *include* **the direct or indirect engaging in, transacting or conducting of activity in this Commonwealth for the purpose of establishing or maintaining a market for the sales of electric energy** *and include obtaining a license or certification from the commission* **to supply electric energy. Retail sales of generation shall be deemed to occur at the meter of the retail consumer.**

66 Pa. C.S. § 2810(j) (emphases added). AEPSC argues that to "engage in electric light and power business" so as to be subject to GRT, an entity must have a license

9

or certification from the PUC to supply energy as a competitive retail electric supplier. Because it has never engaged in the retail sale of electricity in Pennsylvania and it does not have a license from the PUC, AEPSC contends that it cannot be said to be "engaged in [the] electric light and power business" within the meaning of the Tax Code, making its receipts not subject to GRT.

However, whether or not AEPSC is licensed by the PUC as a public utility is not determinative as to whether it is engaged in the electric light business. In *Solar Turbines, Inc. v. Commonwealth*, 816 A.2d 362 (Pa. Cmwlth. 2003), we noted that the Tax Code "identifies taxpayers by the function they perform, without regard to whether they are a public utility," and that Section 1101(b) of the Tax Code by its plain language "imposes [GRT] upon *all entities* that are 'engaged in electric light and power business' and receive revenue from 'the sale of electric energy.'" *Id.* at 365 (emphasis in original) (citing to *Hanley and Bird v. Commonwealth*, 590 A.2d 1382 (Pa. Cmwlth. 1991)). Moreover, through sales to its customers, including LIDA, AEPSC directly conducts activities in the Commonwealth for the purpose of both establishing and maintaining a market for the sale of electricity. *See* 66 Pa. C.S. § 2810(j).

The Competition Act also did not limit the term "sales of electric energy" to only "retail sales of electric generation" because it goes on in the first sentence of Section 2810(j) to expand what is the sale of electricity to include the transmission, distribution and supply of electricity. Not only is it clear from that language that the GRT is not limited to just retail sales, if we were to hold otherwise, then the resale exemption set forth in Section 1101(b)(1) of the Tax

10

Code would be unnecessary because wholesale sales would already be exempt. Finally, Section 2810(j) of the Competition Act specifically provides that if, prior to deregulation, electric sales if bundled would have been deemed sales of electric energy subject to GRT, then those sales, even unbundled, are now deemed sales of electric energy for purposes of Section 1101 of the Tax Reform Code of 1971. *See* 66 Pa.C.S. § 2810(j). For all of these reasons, AEPSC is an electric light company engaged in the electric light and power business and, therefore, subject to GRT.

## IV.

### A.

AEPSC argues that even if it is subject to GRT, its gross receipts from sales to LIDA are exempt. It points to the broadness of Section 1101(b) of the Tax Code, providing that the resale exemption applies to "gross receipts derived from the sales for resale of electric energy to persons, partnerships, associations, corporations or political subdivisions subject to the tax imposed by this subsection upon gross receipts derived from such resale." 72 P.S. § 8101(b)(1). By so doing, AEPSC argues that the General Assembly intended that all sales for resale be exempt from the GRT. But by its very terms, Section 1101(b)(1) of the Tax Code did not include all sales for resale as exempt from being included in gross receipts, only those sales to one of the denominated entities.

**B.**

If all sales for resale are not exempt, AEPSC then argues that its sales to LIDA qualify for the resale exemption[10] because LIDA is a political subdivision. In making that argument, AEPSC acknowledges that Section 1991 of the Statutory Construction Act[11] provides definitions of terms that should be used in all statutes, unless "the context clearly indicates otherwise." 1 Pa. C.S. § 1991. That provision defines a political subdivision as "[a]ny county, city, borough, incorporated town, township, school district, vocational school district and county institution district." *Id.* AEPSC also acknowledges that LIDA does not fall within this definition.[12]

However, AEPSC argues, without saying why, that using the Statutory Construction Act's definition of the term "political subdivision" would lead to an illogical result. AEPSC then argues that the term must be defined according to its common meaning and usage and reasons that, as an industrial development authority formed under the EDFL, LIDA is "a public instrumentality of the Commonwealth and a public body corporate and politic" created by a county "for the purpose of acquiring, holding, constructing, improving, maintaining, owning, financing and leasing, either in the capacity of lessor or lessee, projects."

---

[10] "[C]laims for exemption from taxation are to be strictly construed." *Commonwealth v. Erie Metropolitan Transit Authority*, 281 A.2d 882, 884 (Pa. 1971) (citations omitted).

[11] 1 Pa. C.S. §§ 1501-1991.

[12] 1 Pa. C.S. § 1991 provides that "[t]he following words and phrases, when used in any statute finally enacted on or after September 1, 1937, unless the context clearly indicates otherwise, shall have the meanings given to them in this section:" Both the Tax Code and the Competition Act were enacted after 1937.

12

Section 6(a) of the EDFL, 73 P.S. § 376(a).  Because it carries out those functions, AEPSC argues that LIDA is a political subdivision as it is "[a] division of a state that exists primarily to discharge some function of local government."  Black's Law Dictionary 1197 (8th ed. 2004).  We disagree for several reasons.

First, it is not illogical to use the Statutory Construction Act definition of "political subdivision."  It is the definition to be used in all statutes "unless the context clearly indicates otherwise."  1 Pa. C.S. § 1991.  Nothing in the context of the Tax Code or Competition Act "clearly indicates otherwise," so for this reason alone, the definition of political subdivision contained in the Statutory Construction Act applies.

Second, while authorities owe their existence to various units of government, and their governing boards are appointed by those entities, they are not considered to be part of the political subdivisions that created them.  Nor are they acting on their creators' behalf, but carrying out the purpose of the General Assembly when it authorized the creation of these types of authorities.  As a development authority incorporated under the EDFL, LIDA is "a public instrumentality of the Commonwealth."  Section 6 of the EDFL, 73 P.S. § 376.  This means that a development authority is a separate and distinct entity from the entity that created it, and its function is to carry out the purpose set forth in its enabling act.  The EDFL throughout provides that these types of authorities were created to meet the needs of the people of the Commonwealth.  For example, Section 15 of the EDFL, 73 P.S. § 385, states that:

> The effectuation of the authorized purpose of authorities …. shall and will be in all respects for the benefit of the people of the Commonwealth of Pennsylvania, for the increase of their commerce and prosperity, and for the improvement of their health and living conditions. . . .

*See also* Section 2 of the EDFL, 73 P.S. § 372. Because LIDA is not a political subdivision, AEPSC's sales for resale to LIDA do not qualify for the resale exemption.

## C.

AEPSC also argues that the resale exemption only requires that LIDA be "*subject to* the tax," 72 P.S. § 8101(b)(1) (emphasis added), that the Tax Code does not actually require a reseller to pay GRT in order for the sale to fall within the exemption. The implication of this argument is that just because an exempt entity is subject to the tax means that the wholesaler is not required to pay tax on the receipts from that entity. What this interpretation would mean is that no entity would pay GRT on that particular sale of electricity. The plain language of this provision of the Tax Code demonstrates that it was the General Assembly's intention that GRT must be paid by the appropriate party, and in no case are both the seller and reseller excused from payment.[13]

---

[13] As the Commonwealth points out in its brief, section 15 of the EDFL provides that industrial development authorities shall be free from assessments or taxation on property acquired or used by them in performing their government functions. 73 P.S. § 385. LIDA has taken the position that it is not subject to GRT and, therefore, it did not file a 2010 GRT Report or pay GRT for 2010. It seems evident that taxes should not be imposed on an essential aspect of LIDA's governmental duties as an industrial development authority, e.g., providing electricity to residents of the Business Park. *See Erie Metropolitan*, 281 A.2d at 884 (holding authority was exempt from the fuel tax).

**D.**

Finally, AEPSC contends that in passing the RNR formula as part of the Competition Act, the General Assembly intended that the restructuring of the electric industry neither increase nor decrease the revenue created by GRT. Prior to deregulation, only electric generation was subject to GRT, not delivery of electricity by a service company such as AEPSC. AEPSC argues that the Revenue's determination that AEPSC is now subject to GRT would result in a windfall for the Commonwealth, which is expressly prohibited by the RNR.

This argument demonstrates a fundamental misapprehension of the RNR and deregulation. The purpose and intent of the RNR formula was to avoid state revenue losses that would result from the restructuring of the electric industry, as the Competition Act states:

> (a) General intent of revenue-neutral reconciliation.--It is the intention of the General Assembly that the restructuring of the electric industry be accomplished in a manner that allows Pennsylvania to enjoy the benefits of competition, promotes the competitiveness of Pennsylvania's electric utilities and maintains revenue neutrality to the Commonwealth. This section is not intended to cause a shift in proportional tax obligations among customer classes or individual electric distribution companies. It is the intention of the General Assembly to establish this revenue replacement at a level necessary to recoup losses that may result from the restructuring of the electric industry and the transition thereto.

66 Pa. C.S. § 2810(a). *See also Spectrum II*, 983 A.2d at 646. Prior to deregulation, the services that AEPSC now provides to its customers would have

been provided by public utilities. Those public utilities were subject to GRT and paid tax on revenue from those sales. Excusing AEPSC from GRT on its sales to LIDA then would result in a loss of revenue for the Commonwealth, the exact situation the RNR intended to prevent. Moreover, as explained above, it is the type of service and not the provider that determines taxability.

## V.

If it is subject to payment of the GRT, AEPSC then argues that the Commonwealth is precluded from collecting interest and penalties under the doctrine of equitable estoppel because AEPSC specifically contacted Revenue for an opinion on the GRT resale exemption, Mr. Meredith either intentionally or negligently misrepresented the law, and AEPSC relied upon Mr. Meredith's opinion to its detriment. Citing to *Transcontinental Gas Pipe Line Corporation v. Commonwealth*, 620 A.2d 614 (Pa. Cmwlth. 1993), AEPSC also argues that the Commonwealth should not be permitted to collect GRT, penalties[14] and interest for the 2010 fiscal year because AEPSC did not have notice that its sales to LIDA might not qualify for the resale exemption until 2012, and a change in tax liability should only be prospectively applied. At the outset, the Commonwealth indicated that it has already agreed to waive penalty on the unpaid taxes, so only the issue of payment of interest remains.

---

[14] In its brief to this Court, the Commonwealth notes that the Assessment Notice issued to AEPSC did not assess any penalty against AEPSC on its 2010 GRT liability. The Board's September 24, 2013 Order incorrectly noted that penalties were to be recalculated.

16

We note that "[u]nder Pa. R.A.P. 1571, any issue raised at any level of the administrative proceedings, and thereafter preserved, is properly before this Court if set forth in the petition for review." *Southern Pines Trucking v. Commonwealth*, 42 A.3d 1222, 1228 (Pa. Cmwlth. 2012). While a petition for review to this Court need only contain a general statement of objections to the order appealed, we have held a general objection to the tax assessed does not place the Commonwealth on sufficient notice of specific issues raised. *Id.* (citing *House of Lloyd v. Commonwealth*, 684 A.2d 213 (Pa. Cmwlth. 1996)). Here, AEPSC's petition for review does not include the issues of equitable estoppel, interest abatement or prospective application of the tax. Because these issues were not properly preserved, they have been waived.

In any event, even if it had raised the issue of equitable estoppel, AEPSC cannot prevail on the merits because it did not rely upon Mr. Meredith's advice or upon its purportedly exempt status. This was the first year AEPSC's sales for resale to LIDA were at issue and Revenue never accepted its resale exemption claim. There was no misrepresentation because Mr. Meredith's comments specifically concerned AEPSC's receipts from sales to a municipality, not sales to an authority created pursuant to the EDFL such as LIDA. Even if his comments could somehow be construed as misleading, it is a "fundamental legal principle that a State or other sovereignty cannot be estopped by any acts or conduct of its officers or agents in the performance of a governmental function. No errors or misinformation of officers or agents can estop the government from collecting taxes legally due." *DS Waters of America, Inc. v. Commonwealth*, 150

17

A.3d 583, 592 (Pa. Cmwlth. 2016) (quoting *Commonwealth v. Western Maryland Rail Road Company*, 105 A.2d 336, 340 (Pa. 1954)).

Finally, AEPSC misinterprets the holding in *Transcontinental Gas* and what is meant by the prospective application of tax liability. In that case, the taxpayer relied upon the resale exemption to the utilities GRT for several years and Revenue accepted its returns. Revenue then conducted an audit of taxpayer's 1984 report and disallowed the resale exemption to certain gross receipts resulting in an assessment of tax. On appeal, taxpayer argued that any change in its tax liability should apply only on a prospective basis. We agreed, holding "the gross receipts tax liability w[ould] be applied only from 1984 onward, the date [taxpayer] had *notice* of the possibility that it was not exempt from the utilities gross receipts tax." *Transcontinental Gas*, 620 A.2d at 621 (emphasis in original). This is similar to what occurred in the present case, as AEPSC first had notice of potential tax liability when Revenue disallowed the exemption based on AEPSC's 2010 GRT Report and assessed GRT on AEPSC's receipts from sales to LIDA. Revenue is not attempting to impose GRT on AEPSC's sales for previous tax years and it does not matter that the assessment was not issued until 2012. *See Valentine Company v. Commonwealth*, 973 A.2d 1101 (Pa. Cmwlth. 2009). Because the assessment gave AEPSC notice that it might not qualify for the resale exemption for the contested year only, the assessment is not retroactive. *See Abbotts Dairies, Inc. v. Philadelphia*, 258 A.2d 634 (Pa. 1969); *Valentine Company*; *Transcontinental Gas*.

18

Accordingly, the order of the Board is affirmed with the exception of the portion of the order regarding penalties.

_____
DAN PELLEGRINI, Senior Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

American Electric Power Service   :
Corporation,   :
                Petitioner   :
  :
         v.   :   No. 861 F.R. 2013
  :
Commonwealth of Pennsylvania,   :
             Respondent  :


# **O R D E R**


AND NOW, this $\underline{4}^{\text{th}}$ day of $\underline{\text{May}}$, 2017, the order of the Board of Finance and Revenue (Board) in the above-captioned matter is affirmed with the exception that the portion of the Board's order regarding penalties is vacated. The parties have 30 days from the entry of this order in which to file exceptions. Pa. R.A.P. 1571(i).


_____
DAN PELLEGRINI, Senior Judge