**PECO ENERGY COMPANY,**
Petitioner

v.

**COMMONWEALTH of Pennsylvania,**
Respondent.

Commonwealth Court of Pennsylvania.

Argued March 3, 2004.
Decided May 4, 2004.

William H. Roberts, Philadelphia, for petitioner.

Bart J. DeLuca, Jr., Harrisburg, for respondent.

BEFORE: COLINS, President Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, LEADBETTER, Judge, and COHN, Judge.

OPINION BY President Judge
COLINS.

Petitioner, PECO Energy Company filed exceptions to this Court's opinion and order in *PECO Energy Co. v. Commonwealth*, 828 A.2d 497 (Pa.Cmwlth. 2003), affirming the Board of Finance and Revenue's denial of PECO's petition for resettlement of its 1997 public utility real-ty tax in which it contested the Department of Revenue's determination of the state taxable value of PECO's utility real-ty.

Because the exceptions present the same questions and issues addressed by this Court in our earlier opinion, PECO's exceptions are overruled, and the opinion of the three-judge panel is adopted as that of the Court en banc.

**ORDER**

AND NOW, this 4th day of May 2004, the petitioner's exceptions in the above-captioned matter are overruled. The Chief Clerk is directed to enter judgment in favor of the Commonwealth of Pennsylvania.

Dissenting opinion by Judge LEADBETTER joined by Judge COHN.

Dissenting OPINION BY Judge LEADBETTER.

Although I joined in the original panel opinion issued in this appeal, further consideration of the exceptions filed by the taxpayer and the Commonwealth's response have forced me to the conclusion that our original decision was in error.

I will not here repeat the background facts and procedural history already recounted by the majority. The question here is whether PECO understated the State taxable value upon which its Public Utility Realty Tax for 1997 was based. As noted by the majority, PURTA[1] defined "state taxable value" as, "[t]he cost of utility realty, less reserves for depreciation and depletion, as shown by the books of

---

1. The Public Utility Realty Tax Act (PURTA), Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. §§ 8101–A—8111–A. As noted by the majority, PURTA was amended in 1999 by the Act of May 12, 1999, P.L. 26, but those amendments do not apply to the tax year at issue.

account of a public utility ..." [2] It is not disputed that the State taxable value declared by PECO was, in fact, the cost of its utility realty as shown on its books of account, less depreciation and depletion reserves. Depreciation and depletion reserves are not here in issue, but only the cost value, specifically whether cost for PURTA purposes must be acquisition cost or may be written down when some extraordinary event impairs the realty's value. It is also undisputed that the writedown taken on PECO's books was required in accordance with generally accepted accounting principles [GAAP], reflected a genuine decrease in value [3] and was mandated by PECO's outside auditors, and approved by the PUC and the Federal Energy Regulatory Commission [FERC].[4]

I do not disagree with the majority's statement that "financial accounting and tax accounting have different objectives and serve different purposes .... [and hence] 'Given this diversity, even contrar-

iety, of objectives, any presumptive equivalency between tax and financial accounting would be unacceptable.'" *PECO Energy Co. v. Commonwealth*, 828 A.2d 497, 500 (Pa.Cmwlth.2003) [quoting *Thor Power Tool Co. v. Commissioner*, 439 U.S. 522, 542–43, 99 S.Ct. 773, 58 L.Ed.2d 785 (1979)]. What I fail to see, however, is what principle of tax accounting is applicable here which conflicts with the financial accounting principles upon which taxpayer relies. In *Thor Power Tool*, the court considered a provision of the Internal Revenue Code which specifically allowed the computation of taxable income based on records maintained in accordance with GAAP only if, in the opinion of the Commissioner, such computations "clearly reflect income." Because he reasonably determined that Thor's GAAP records did not clearly reflect income, the Commissioner did not abuse his discretion in requiring a different method of calculation. Here, however, neither the Department

---

**2.** Section 1101–A(4), 77 P.S. § 8101–A(4).

**3.** SFAS–121 provides:
Recognition and Measurement of Impairment
    4. An entity shall review long-lived assets and certain identifiable intangibles to be held and used for impairment whenever events or changes in circumstances indicate that the carrying amount of an asset may not be recoverable.
    5. The following are examples of events or changes in circumstances that indicate that the recoverability of the carrying amount of an asset should be assessed:
    a. A significant decrease in the market value of an asset
    b. A significant change in the extent or manner in which an asset is used or a significant physical change in an asset
    c. A significant adverse change in legal factors or in the business climate that could affect the value of an asset or an adverse action or assessment by a regulator
    d. An accumulation of costs significantly in excess of the amount originally expected to acquire or construct an asset

    e. A current period operating or cash flow combined with a history of operating or cash flow losses or a projection or forecast that demonstrates continuing losses associated with an asset used for the purpose of producing revenue.
Exhibit 15 to Stipulation of Facts.
    These factors are plainly related to the value of a utility's real property, particularly using the capitalization of income approach. Since PURTA taxes are tied by statute to local real estate tax values, it is logical that a diminution in the latter may well decrease the former. As the majority notes, since the tax year in question, PURTA has been amended to provide that State taxable value be computed using the same factors upon which local property tax values are based.

**4.** As the Commonwealth correctly points out, approval of regulatory agencies are not binding on taxing authorities. However these approvals attest to the legitimacy of the writedown.

nor the majority points to any provision of PURTA, nor any other part of our Tax Code, which may be said to "trump" the taxpayers GAAP recordkeeping. Indeed, in this instance, PURTA specifically bases its definition on the values shown in the company's books. Thus, the taxpayer does not contend that GAAP prevails over PURTA, but that PURTA incorporates GAAP, since that is the manner in which PECO keeps its financial records.

In support of the notion that the cost factor used to compute PURTA's state taxable value may only be acquisition cost, the majority suggests two bases. First, that "the plain meaning of cost is original cost." *PECO Energy*, 828 A.2d at 501. This is so only if one ignores PURTA's qualifying language, "as shown by the books of account of a public utility." *See* Section 1101–A(4). In interpreting a statute, we must give effect to all its provisions and this the majority has failed to do.

Next, the majority posits that, "the General Assembly could not have contemplated a one-time, extraordinary reduction in the value of utility realty based on deregulation of one aspect (i.e., electric generation) or one type of utility because permitting such a reduction to one type of utility would result in other utilities shouldering a greater portion of the gross amount of real estate taxes that the local taxing authorities could have imposed on the real property." *Id.* at 501–02. It does not seem at all unlikely to me that the legislature intended, where a sea change in the law has significantly diminished the value of assets held by one type of utility, to reallocate a greater share of the tax burden to those utilities whose property now accounts for a greater proportional share of the total value. At all events, I do not believe that such an intent would be so absurd that we cannot attribute it to the legislature.

In short, while the majority may be correct that the General Assembly may have had reason (and constitutional authority) to mandate that PURTA State taxable value be based upon some accounting method other than GAAP, I am not convinced that it has done so. Accordingly, I must respectfully dissent from the decision to overrule the taxpayer's exceptions.

Judge COHN joins in this dissenting opinion.