919 A.2d 188

PECO ENERGY COMPANY, Appellant,

v.

COMMONWEALTH of Pennsylvania, Appellee.

Supreme Court of Pennsylvania.

Argued Dec. 4, 2006.

Decided March 26, 2007.

406

Michael J. Semes, Esq., Eric D. Strand, Esq., William H. Roberts, Esq., Robert P. Harrill, Jr., Esq., Joseph Dominguez, Esq., Blank Rome, L.L.P., Broomall, for PECO Energy Company.

Gerald J. Pappert, Esq., Bart J. DeLuca, Esq., PA Office of Attorney General, for Commonwealth of Pennsylvania.

BEFORE: CAPPY, C.J., and CASTILLE, SAYLOR, EAKIN, BAER, and BALDWIN, JJ.

## OPINION

Justice BALDWIN.

■ This case involves the computation of tax under the Public Utility Realty Tax Act ("PURTA") (72 Pa.C.S. §§ 8101–A–8109–A)[1] for PECO Energy Company ("PECO") after the de-regulation of the electric market effectuated by the Electricity Generation Customer Choice and Competition Act, 66 Pa.C.S. §§ 2801–2812 (the "Act"). At its essence, this case centers on the meaning of the word "cost" as used in PURTA. PECO alleges that the plain language of PURTA indicates that the cost to be used is the cost "as shown by the books of account of a public utility." 72 P.S. § 8101–A(4). Additionally, PECO contends that the Act caused a significant decrease in the value of their electric generation assets which made it necessary for them to restate the cost of those assets on their books. However, the Commonwealth disagrees, and alleges that "cost" in accounting terms means "original cost." The Board of Finance and Revenue agreed. The Commonwealth Court determined that PECO had incorrectly used a cost for assets which was reduced due to stranded costs,[2] rather than the original cost of the item. Because the plain language of the statute indicates that the cost used to compute PECO's PURTA tax shall be the cost reflected on the books of account of the company, and because PECO, in its original PURTA tax return, used the cost correctly reflected on its books of account, we reverse.

The Act was signed into law on December 3, 1996, with an effective date of January 1, 1997. PECO submitted a proposed comprehensive restructuring plan, as required under the Act on April 1, 1997. The PUC rejected PECO's proposed

1. PURTA was originally passed on March 7, 1971, P.L. 6, No. 2. That Act was amended and replaced by the Act of May 12, 1999, P.L. 26, No. 4. Because the 1971 Act was effective at all relevant times, all references to PURTA will be to the 1971 version thereof, unless otherwise clearly stated.

2. Stranded costs are costs for assets which are overpriced on the balance sheet of the company. These assets are often assets with high construction costs which were due to be recuperated through the rate guaranteed under the previous monopoly system and which now will operate at a loss.

plan, and on December 23, 1997, the PUC entered an opinion and order establishing a detailed plan for deregulation of PECO's electric generation operations. 181 P.U.R. 4th 517 (1997). PECO subsequently filed a Petition for Reconsideration, Clarification, and/or Amendment and the PUC, on January 16, 1998, revised the plan for deregulation of PECO's electric generation operations. 88 Pa.P.U.C. 24 (1998). In April 1998, PECO filed its 1997 PURTA tax report pursuant to Section 1102–A(b) of PURTA, showing the amount and manner of computation of the state taxable value upon which it based its payment of utility realty tax. PECO reported the 1997 state taxable value of its utility realty to be $184,246,005 for a tax of $7,738,332 (for comparison, in the 1995 tax year, PECO reported a state taxable value of $1,441,558,601, and for 1996 it reported a state taxable value of $1,396,441,347). The Department of Revenue audited PECO's 1997 PURTA return, and as a result, it settled PECO's 1997 utility realty tax at $63,480,824 based on a settled state taxable value of $1,511,448,190.

PECO petitioned for resettlement, alleging that because it had reported the cost shown on its books at the time, as required by statute, and because it could demonstrate that its books were in compliance with generally accepted accounting principles ("GAAP"), the Department of Revenue had erred in its settlement values. The Board of Appeals refused resettlement, and the Board of Finance and Revenue concluded that the Department of Revenue had properly calculated the state taxable value of PECO's utility realty.

PECO appealed to the Commonwealth Court. The Commonwealth Court relied on *Thor Power Tool Co. v. Commissioner*, 439 U.S. 522, 99 S.Ct. 773, 58 L.Ed.2d 785 (1979), for the proposition that tax accounting and financial accounting have different purposes and objectives and the cost used for purposes of PECO's books was not original cost, which the court believed was the "cost" contemplated by PURTA. Additionally, the Commonwealth Court noted that although PECO adopted the accounting changes for the 1997 year, "the PUC did not issue its initial or final restructuring order until 1998,"

thus PECO could not "reasonably or reliably determine how deregulation would effect its electric generation business" at the time the accounting systems were changed.[3] Therefore, the three-member panel held that PECO was not entitled to use any form of extraordinary deduction to determine its taxable value for purposes of PURTA and the court affirmed the Board of Finance and Revenue. *PECO Energy Co. v. Com.*, 828 A.2d 497 (Pa.Cmwlth.2003). Subsequently, an *en banc* panel of that Court, in a 3–2 decision, affirmed the original panel's decision, adopting the original opinion as written. *PECO Energy Co. v. Com.*, 848 A.2d 1099 (Pa.Cmwlth. 2004). Judge Leadbetter, writing for the dissent, noted that although financial accounting and tax accounting have different objectives, those objectives are not at odds for purposes of determining the amount of PECO's utility realty tax. *Id.* at 1100. She noted that while *Thor Power Tool* did determine that GAAP did not control in that case, the statute at issue in *Thor* indicated that GAAP would only control if the Commissioner believed that the method used clearly reflected the income of the company. Thus, the statute itself contained language which trumped GAAP. *PECO Energy Co.* at 1100–01. No such language exists in the PURTA statute at issue here. To the contrary, the statute "specifically bases its definition [of state taxable value] on the values shown in the company's books." *Id.* at 1101. Thus, the dissent would have used PECO's book value to establish the cost of the realty to compute PECO's PURTA tax. *Id.*

Appellants agree with the dissent. They indicate that the PUC's initial restructuring order (December 23, 1997) triggered a GAAP **requirement** that PECO write down the "cost" of its electric generation property. This is born out by the uncontroverted testimony in the expert reports (included in the parties' stipulation of facts), as well as by the actual language of SFAS 71 and 121.[4] Also, the plain meaning of the

3. As indicated, *supra,* the PUC actually issued its initial decision on December 23, 1997.

4. The Financial Accounting Standards Board ("FASB") is the body which establishes the standard accounting practices in the United

statute indicates that the cost used is to be the "cost ... as reflected on the books of account." SFAS 121, which PECO was required to use for its books after deregulation, required PECO to restate the cost as the original cost less the one-time impairment due to the stranded costs from deregulation of the electric industry.[5]

States which are known as GAAP. FASB accomplishes this through various types of pronouncements. These pronouncements must be followed in order for an entity to be considered to be in compliance with GAAP (which is required by the Securities Exchange Commission for all public companies, including PECO). At issue in the instant case are three Statements of Financial Accounting Standards ("SFAS"): SFAS No. 71: Accounting for the Effects of Certain Types of Regulation; SFAS No. 101: Regulated Enterprises—Accounting for the Discontinuation of Application of FASB Statement No. 71; and SFAS No. 121: Accounting for the Impairment of Long–Lived Assets and for Long–Lived Assets to be Disposed Of. PECO had used SFAS No. 71 prior to deregulation. However, the scope statement of SFAS No. 71 indicates that that

Statement applies to general-purpose external financial statements of an enterprise that has regulated operations that meet all of the following criteria:

a. The enterprise's rates for regulated services or products provided to its customers are established by or are subject to approval by an independent third-party regulator or by its own governing board empowered by statute or contract to establish rates that bind customers.

b. The regulated rates are designed to recover the specific enterprise's costs of providing the regulated services or products.

c. In view of the demand for the regulated services or products and the level of competition, direct and indirect, it is reasonable to assume that rates set at levels that will recover the enterprise's costs can be charged to and collected from customers. **This criterion requires consideration of anticipated changes in levels of demand or competition during the recovery period for any capitalized costs.**

(emphasis added).

SFAS 101 indicates

When an enterprise determines that its operations in a regulatory jurisdiction no longer meet the criteria for application of Statement 71, that enterprise shall discontinue application of that Statement to its operations in that jurisdiction. If a separable portion of the enterprise's operations within a regulatory jurisdiction ceases to meet the criteria for application of Statement 71, application of that Statement to that separable portion shall be discontinued. That situation creates a presumption that application of Statement 71 shall be discontinued for all of the enterprise's operations within that regulatory jurisdiction. That presumption can be overcome by establishing that the enterprise's other operations within that jurisdiction continue to meet the criteria for application of Statement 71.

5. SFAS 121(11): "After an impairment is recognized, the reduced carrying amount of the asset *shall be accounted for as its new cost.* For

■ Appellants also note that when the meaning of a statute is clear, there is no reason for the court to delve into statutory interpretation rules. *Philadelphia Hous. Auth. v. Commonwealth of Pennsylvania, Labor Relations Bd.*, 508 Pa. 576, 581, 499 A.2d 294, 297 (1985). Here, the meaning of the statute is clear—the Legislature indicated that the basis of state taxable value was to be the "cost ... as shown on the books of account." Additionally, the Legislature is presumed to understand that different terms mean different things. The General Assembly chose the "books of account" standard. There are many other standards used by the General Assembly for tax related purposes.[6] Also, the Corporate Net Income Tax Apportionment statute uses the term "original cost," indicating that if the Legislature had meant for the PURTA definition of state taxable value to incorporate the term "original cost," they would have so indicated. 72 P.S. § 7401(3)(11) ("Property owned by the taxpayer is valued at its original cost.").

Appellees argue that "cost" means "original cost" because generally that is the interpretation of the word "cost" in dictionaries and other accounting books. The Commonwealth also notes that the United States Supreme Court has determined that GAAP and tax accounting have separate objectives and purposes and the fact that an accounting method is correct for purposes of GAAP has no bearing on whether or not it is correct for purposes of tax accounting. *Thor Power Tool Co. v. Commissioner*, 439 U.S. 522, 99 S.Ct. 773, 58 L.Ed.2d 785 (1979). The Commonwealth also characterizes PECO's reduction of cost on its books as an extraordinary

a depreciable asset, the new cost shall be depreciated over the asset's remaining useful life. Restoration of previously recognized impairment losses is prohibited."

6. Appellants note that in the following tax-related statutes, the General Assembly used alternative bases for the tax reporting: (1) in the Corporate Net Income Tax statute (72 P.S. § 7401), the tax is to be reported in accordance with federal income tax principles; (2) for Capital Stock—Franchise Tax (72 P.S. § 7601), the tax is based on the taxpayer's "books"; and (3) for Personal Income Tax purposes (72 P.S. § 7301(a)), it is to be reported in accordance with GAAP "to the extent not inconsistent with the regulations of the department."

deduction which is unauthorized by PURTA. Appellees additionally point out that no final decision was issued in 1997, thus PECO did not suffer actual losses in 1997 and thus there was no reason for its taxes to be reduced.

This case revolves around the language of the statute. The base of the PURTA tax was "State taxable value," which was defined at the time by the statute as:

> The cost of utility realty, less reserves for depreciation and depletion, as shown by the books of account of a public utility: Provided, That for any public utility which was not required to record annual depreciation on its utility realty prior to enactment of section 503 of the Public Utility Law or Title 66 Pa.C.S. § 1703 (relating to depreciation accounts; reports), the depreciation deduction prescribed in this definition shall be the book reserve or fifty per cent of the book cost, whichever is greater.

72 P.S. § 8101–A(4).[7]

"Books of account" is defined in Blacks Law Dictionary as "Books in which merchants, traders, and businessmen generally keep their accounts; including journals, ledgers and other accounting records. Entries made in the regular course of business." *Black's Law Dictionary* 183 (6th ed.1990).

While it is true that "cost" is normally defined for accounting purposes as original cost, SFAS 121 indicates that "[a]fter an impairment is recognized, the reduced carrying amount of the asset **shall be accounted for as its new cost.** For a depreciable asset, the new cost shall be depreciated over the asset's remaining useful life. Restoration of previously recognized impairment losses is prohibited." FASB SFAS 121 ¶ 11.

As PECO's experts indicated in their statements, the FASB pronouncements required that PECO reduce the cost reflected

7. It should be noted that in May of 1999, "State taxable value" was redefined to mean "[c]urrent market value calculated by adjusting the assessed value for county real estate tax purposes for the taxable year for the common level ratio of assessed values to market values of the county as established by the State Tax Equalization Board after July 1 of the taxable year." 72 Pa.C.S. § 8101–A(4). Thus, the analysis herein is limited to the language of the statute as it existed prior to this amendment.

on their books of account to cost less impairment. The court below relied on the Supreme Court's decision in *Thor Power Tool* to determine that the plain language of the statute was not controlling. As noted by the dissent in the Commonwealth Court, this misinterprets *Thor Power Tool.* In fact, *Thor Power Tool* was similar to the instant case in that the Court relied on the language of the statute at issue to reach its decision. Specifically, the Court determined that GAAP did not control because, although the section of the U.S.Code at issue indicated that "[t]axable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books," the statute went on to indicate that "[i]f the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Commissioner, does clearly reflect income." 26 U.S.C. § 446. Therefore, the express language of the statute indicated that the Internal Revenue Service Commissioner could overrule GAAP principles if the Commissioner determined that the method used by the tax payer did not "clearly reflect income." No such language exists in the PURTA statute.

Here, the plain language of the statute clearly states that the cost used is to be the "cost . . . as shown on the books of account." 72 Pa.C.S. § 8101–A(4). This decision is in accord with *Thor Power Tool.* We agree that if PECO had failed to keep its books of account in accordance with GAAP, the Department of Revenue would have been correct to question PECO's use of the cost figure in its books as the basis for its tax payment. However, PECO's books were kept in accordance with GAAP and the Legislature chose to have the basis of the tax be that figure as shown on PECO's books of account. It is not within this Court's power to change the plain language of the statute.

For the above reasons, we reverse the decision of the Commonwealth Court and remand for the Board of Finance and Revenue to resettle PECO's 1997 PURTA tax. Jurisdiction relinquished.

Former Justice NEWMAN did not participate in the decision of this case.

Chief Justice CAPPY and Justices CASTILLE, SAYLOR, EAKIN and BAER join the opinion.