SPECTRUM ARENA LIMITED PARTNERSHIP, Petitioner

v.

COMMONWEALTH of Pennsylvania, Respondent.

Commonwealth Court of Pennsylvania.

Argued March 12, 2008.
Decided April 30, 2008.
Publication Ordered June 30, 2008.

Michael J. Semes, Philadelphia, for petitioner.

Clinton G. Smith, Jr., Sr. Deputy Attorney General, Harrisburg, for respondent.

BEFORE: LEADBETTER, President Judge, and SMITH–RIBNER, Judge, and PELLEGRINI, Judge, and FRIEDMAN, Judge, and COHN JUBELIRER, Judge, and SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY Judge PELLEGRINI.

Spectrum Arena Limited Partnership (Taxpayer) has filed exceptions to this Court's April 18, 2007 opinion and order affirming the Board of Finance and Revenue's (Board) denial of its request for a refund of sales tax paid on the distribution, transmission and transition charges associated with its purchase of electricity. For the following reasons, we deny the exceptions.

The underlying facts of this case need not be reiterated in their entirety and, instead, we incorporate the factual background as discussed in our original opinion, *Spectrum Arena Limited Partnership v. Commonwealth*, 921 A.2d 585 (Pa. Cmwlth.2007), into the instant matter. For review of Taxpayer's exceptions, it is sufficient to note that Taxpayer paid sales tax pursuant to the Tax Reform Code of 1971[1] (Tax Code) on the generation as well as the delivery services (transmission and distribution) and related costs (competitive transition charges and intangible transition charges) associated with its consumption of electricity during the period of April 11, 2000, through April 11, 2003 (Refund Period). It then sought a refund on the taxes paid for the delivery services and related costs, which it claimed were nontaxable, because these items were not the sale of tangible personal property or a specifically enumerated taxable service under the Tax Code.

■ Taxpayer's main exceptions center on our Supreme Court's recent holding in *PECO Energy Company v. Commonwealth*, 591 Pa. 405, 919 A.2d 188 (2007), which involved a review of the way that tax due to the Commonwealth was computed under the Public Utility Realty Tax Act (PURTA) following the deregulation of the electric market effectuated by the Electricity Generation Customer Choice and Competition Act (Competition Act), 66 Pa. C.S. §§ 2801–2812. At issue in *PECO* was the word "cost" as used in PURTA to determine the cost of PECO's utility realty. PECO alleged that the plain language of PURTA indicated that the cost to be used was the cost as shown by the books of account of a public utility. The Commonwealth disagreed, asserting that "cost" in accounting terms meant the original cost. In reversing our decision[2] adopting the Commonwealth's interpretation, the Supreme Court concluded that the language of PURTA was clear and that "cost" was shown on the books after the utility wrote down the cost of electric generation property as required by generally accepted accounting principles, not original cost.

Notwithstanding that the tax neutrality provision[3] contained in the Competition Act was not even discussed in *PECO*, Tax-

---

1. Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. §§ 7101–10004. The Department of Revenue issued a policy statement at 61 Pa. Code § 60.23(d) stating "To fulfill its responsibilities under Article II of the [Tax Reform Code], as well as, the recognition of the intention of the General Assembly, as provided under the act, the Department is required to impose Sales and Use Tax upon the total purchase price charged upon each separate charge for the generation, transmission, or distribution in connection with providing nonresidential electric utility services as well as all related charges, services or costs for the generation, production, transmission, or distribution of electricity whether or not the total

amount charged is billed as a single charge by one vendor or billed separately by one or more vendors."

2. *See PECO Energy Company v. Commonwealth*, 848 A.2d 1099 (Pa.Cmwlth.2004).

3. Section 2810(a) of the Competition Act, 66 Pa.C.S. § 2810(a), provides:

It is the intention of the General Assembly that the restructuring of the electric industry be accomplished in a manner that allows Pennsylvania to enjoy the benefits of competition, promotes the competitiveness of Pennsylvania's electric utilities and main-

payer contends that our Supreme Court held that in the restructuring of the electric industry, existing tax legislation is to be construed with the Tax Code's plain language without engrafting artificial language in an effort to preserve pre-Competition Act tax schemes. It then argues that in contravention of this principle, this Court failed to apply the plain language of 61 Pa.Code § 54.1(c)[4] that dictates that charges for delivery are non-taxable when made or billed by a party other than the vendor and, instead, engrafted additional language into the regulation by stating that delivery charges are subject to tax where delivery is required to move the object purchased from the vendor to the consumer. Taxpayer maintains that because it purchased electricity off of Exelon Energy, a third-party generator, during the Refund Period and the delivery of the electricity was made by PECO, an entity other than the vendor, it is entitled to a refund under 61 Pa.Code § 54.1(c).

■ Although the Competition Act unbundled transmission and distribution charges from generation charges, it did not sever the relationship between an electricity supplier from a public utility providing distribution services because the utility was still required to deliver to a customer if the supplier could not do so. 66 Pa.C.S. § 2807(e)(3). Moreover, while a customer could select a supplier, it did not sell an identifiable bushel of electrons to the customer. The generator merely added electrons to the system increasing the overall number of electrons available on the system. Under the Competition Act, even though a customer could select a supplier, the monopoly utility was still necessary to deliver the electricity to the customer, even if its chosen supplier was unable to place the contracted amount of electrons on the system. To complete the sale at retail[5] between the customer and the supplier, the supplier and distributing utility had to work in one seamless transaction to deliver those electrons to a desired location.[6] As we pointed out in our underlying opinion in this case:

A sales tax is imposed on a "sale at retail" on the "purchase price." "Sale at

tains revenue neutrality to the Commonwealth. This section is not intended to cause a shift in proportional tax obligations among customer classes or individual electric distribution companies. It is the intention of the General Assembly to establish this revenue replacement at a level necessary to recoup losses that may result from the restructuring of the electric industry and the transition thereto.

4. 61 Pa.Code § 54.1(c) provides, "Charges for delivery made by someone other than the vendor and billed by someone other than the vendor are not subject to tax."

5. Section 201(k)(1) of the Tax Code, 72 P.S. § 7201(k)(1), defines "sale at retail" as "[a]ny transfer, for a consideration of the ownership, custody, or possession of tangible personal property, including the grant of a license to use or consume whether such transfer be absolute."

6. Taxpayer has taken exception to our conclusion that the sale of electricity occurs at a

customer's meter because the Competition Act separated the generation of electricity from its delivery and, as a result, Taxpayer argues that its purchase of electricity was completed at the point where it was placed into PECO's distribution network, not when it reach the meter at its facility. Notwithstanding this contention, the amount of electricity that Taxpayer consumed was not determinable at the time it was placed into PECO's distribution network because the seamless transaction that constituted the sale at retail of electricity had not been completed. Under Taxpayer's position, the ultimate reception of electricity would be divided into separate services, whereas, by the time it was able to utilize the electricity it had purchased, both generation and delivery had occurred. It was at this point, at Taxpayer's meter, where PECO could determine how much electricity was consumed by Taxpayer and the sale at retail concluded.

retail" is defined as "any transfer, for a consideration of the ownership, custody, or possession of tangible personal property, including the grant of a license to use or consume whether such transfer be absolute." 72 P.S. § 7201(k)(1). "Purchase price" is defined as "the total value of anything paid or delivered, or promised to be paid or delivered, whether it be money or otherwise, in complete performance of a sale at retail or purchase at retail, as herein defined, without any deduction on account of the cost or value of the property sold, cost or value of transportation, cost or value of labor or service, interest or discount paid or allowed after the sale is consummated, any other taxes imposed by the Commonwealth of Pennsylvania or any other expense except that there shall be excluded any gratuity or separately stated deposit charge for returnable containers." 72 P.S. § 7201(g)(1). Even though a service is not one of the specifically enumerated services, if the cost of that service is bundled into the sale of the taxable item as part of the purchase price, it is also taxable.

For example, if a customer buys a refrigerator but wants it delivered, regardless of whether the retail store delivers the merchandise itself or contracts with a third party for the delivery, the cost needed to move the goods from the store to the customer is includable in the purchase price paid when the customer buys the refrigerator. The purchase price is subject to sales tax because it represents the total value of the merchandise and delivery, both of which are necessary to complete the transaction between the retail store and the customer. If, however, the customer hires its own delivery service, then the charge for delivery is not subject to the tax. The question here, then, is whether, for sales tax purposes, transmission and distribu-tion charges are delivery charges included in the purchase of electricity.

What the Competition Act did was to allow anyone to buy electricity from any entity it wanted, but it also required the purchaser to use the regulated utilities to deliver it. The Competition Act did not make the distributing public utility a stranger to the transaction because it was required to deliver electricity to the customer, even if the supplier could not, and the distribution and transmission utilities were required to deliver the electricity to the customer whether they wanted to or not. Because only when electricity is delivered and flows through the customer's meter is it measured and the purchase price set, this is when the sale occurs, and the customer has made a purchase of the seamless transaction of all that had occurred up to that time. While each bill may have separately listed as components of the overall bill the cost of electricity, transmission and distribution, much like a purchase price for a refrigerator separates the cost of delivery, the overall purchase price of electricity not only includes the cost of the electricity itself, but also the cost to deliver that electricity to the customer and other associated costs. Similarly, just as CTCs [competitive transition charges] and ITCs [intangible transition charges] were made components attributable to the delivery of electricity by the Competition Act, they, too, are includable in the purchase price. Because all of those items were included in Taxpayer's purchase price, the entire amount of the purchase price is then subject to the sales tax.

*Spectrum*, 921 A.2d at 589–590. Because both services—generation and delivery—had to be bundled for the electricity to reach its destination, it is one seamless transaction, does not fall within the ambit

of 61 Pa.Code § 54.1(c), and the entire transaction is subject to the sales tax.[7]

Again purportedly relying on *PECO*, Taxpayer next argues that the Supreme Court determined that revenue neutrality was to take no part in the construction and application of the plain language of tax statutes, and we erred in finding that the delivery services of electricity were subject to sales tax so as to maintain revenue neutrality. Assuming that interpretation to be true, contrary to Taxpayer's assertion, our determination that distribution and transmission services were taxable was based on a sales tax analysis consistent to that heretofore discussed rather than one in which a tax was required on those delivery services to maintain revenue neutrality. We only addressed revenue neutrality in order to demonstrate an example of shifting tax burdens if Taxpayer's position that under the Competition Act only the generation of electricity is taxable was correct. Because our conclusion that delivery services were subject to sales tax was not predicated on revenue neutrality, we must dismiss this exception.

Taxpayer finally contends that if the General Assembly intended for sales tax to be levied on the delivery services of electricity, it would have expanded the def-inition of the sales tax base the same way it expanded the definition of "sales of electric energy" for the Utilities Gross Receipt Act (UGRT) in Section 1101(b) of the Tax Code, 72 P.S. § 8101(b).[8] In not doing so, Taxpayer maintains that the General Assembly did not intend to expand the sales tax base to apply to each individual service of the provision of electricity that the Competition Act unbundled. What this contention fails to recognize, however, is that even though the Competition Act permitted a customer to purchase electricity services separately, a change to the sales tax base similar to that made to the UGRT was not needed because it never exempted transmission and distribution services from being a component of the purchase price as they are includable in the sale of electricity. Because the existing language of the sales tax base already encompasses each of the disputed services, a corresponding change to that tax base was unnecessary.

Accordingly, we deny the exceptions filed by Taxpayer to our opinion and order of April 18, 2007.

### ORDER

AND NOW, this 30th day of April, 2008, we deny the exceptions filed by Spectrum

7. Taxpayer also argues that this Court improperly concluded that the competitive transition charges and intangible transition charges (collectively, Transition Charges) were taxable as part of the delivery services associated with the provision of electricity when we have formerly determined that such delivery services were "irrelevant" to the collection of Transition Charges. *See Borough of Olyphant v. Pennsylvania Public Utility Commission*, 861 A.2d 377, 387 (Pa.Cmwlth.2004). We disagree with this assertion because the Transition Charges were never designated to be an actual part of the delivery service but rather a component of Taxpayer's electric bill that arose from the public utility's provision of electricity. Although the Transition Charges represent distinct charges that allow distributing utilities to recover stranded costs, they are, nonetheless, elements, along with generation and delivery charges, that constitute the purchase price of electricity and are subject to sales tax.

8. Section 2810(j) of the Competition Act, 66 Pa.C.S. § 2810(j), expanded the definition of "sales of electric energy" to include "[r]etail sales of electric generation, transmission, distribution or supply of electric energy, dispatching services, customer services, competitive transition charges, intangible transition charges and universal service and energy conservation charges and such other retail sales in this Commonwealth."

Arena Limited Partnership to the opinion and order of this Court, dated April 18, 2007, and enter judgment in favor of the Commonwealth.

OPINION BY Judge COHN JUBELIRER.

Respectfully, I dissent. I believe the plain language of the statutory and regulatory provisions compel a different result.

In the present case, the parties stipulated that Spectrum Arena Limited Partnership (Spectrum) purchased its electricity from Exelon Energy (Exelon), but that the electricity it purchased from Exelon was delivered by and billed by an entirely separate entity, PECO Energy Company (PECO). The language in the Code is clear: "(c) Charges for delivery made by someone other than the vendor and billed by someone other than the vendor are not subject to tax." 61 Pa.Code § 54.1. Applying this language to the stipulated facts, Exelon was the vendor and PECO was someone other than the vendor who delivered and billed the electricity. As such, by the plain language of Section 54.1, the charges for delivery by PECO are not subject to taxation.

I note that this conclusion is supported by the similar approach adopted by the General Assembly as to natural gas. The Natural Gas Choice and Competition Act, 66 Pa.C.S. §§ 2201–2212, like the Electricity Generation Customer Choice and Competition Act (Competition Act), 66 Pa.C.S. §§ 2801–2812, manifests the General Assembly's intent to deregulate the respective industries. *Compare* 66 Pa.C.S. § 2203(3) (stating that "[t]he commission shall require natural gas distribution companies to unbundle natural gas supply services") *with* 66 Pa.C.S. § 2802(14) (requiring "electric utilities to unbundle their rates and services . . . to allow competitive suppliers to generate and sell electricity

directly to consumers" and requiring electric utilities "to provide open access [to competitive suppliers] over their transmission and distribution systems . . . .") In doing so, the General Assembly utilized similar approaches, in particular, segregating the delivery function from the production function of the particular resource. In the present case, the Commonwealth acknowledged "that separately stated charges for the transportation of natural gas are not subject to [sales tax] and are not included in the purchase price of natural gas." (Commonwealth's Response to Spectrum's First Set of Request for Admissions; Department of Revenue Letter Ruling (January 4, 2000) at 2 (stating that "[t]he charges for delivery of natural gas made by someone other than the vendor and billed by that entity are not subject to sales tax.").) Neither the Commonwealth in its Brief, nor the majority in its opinion, accounts for the disparate treatment. I find these disparate treatments of similar industries, by means of similar statutory language, inexplicable.

Additionally, I find support from our Pennsylvania Supreme Court's decision in *PECO Energy Company v. Commonwealth,* 591 Pa. 405, 919 A.2d 188 (2007). While the majority is correct that *PECO* did not address the tax neutrality provision of the Competition Act, I believe the Supreme Court's rationale in *PECO* guides our analysis in the present case. In *PECO,* the Supreme Court reversed our Court's decision, which found that the Competition Act "had no effect on the value of its utility realty for tax purposes." *PECO Energy Company v. Commonwealth,* 828 A.2d 497, 502 (Pa.Cmwlth. 2003), *adopted as opinion of en banc court,* 848 A.2d 1099 (2004), *rev'd* 591 Pa. 405, 919 A.2d 188 (2007). We reached this decision despite generally accepted accounting practices requiring that the "cost . . . as shown on the books" of PECO's realty must be written down because of the Com-

petition Act. *PECO,* 591 Pa. at 411, 919 A.2d at 191 (quoting Section 3 of the Act commonly known as the Public Utility Realty Tax Act[1] (PURTA), 72 P.S. § 8101–A(4)). The Supreme Court, in reversing this Court, held that the plain language of PURTA needed to be applied and that the decline in value of the realty was a legally significant consequence of the General Assembly's enactment of the Competition Act, which could not be ignored. The Supreme Court concluded that "[i]t is not within this Court's power to change the plain language of the statute." *PECO,* 591 Pa. at 413, 919 A.2d at 193. Applying this principle to the present case, I similarly conclude that the clear language of the Competition Act and Section 54.1 cannot be ignored, and that the legal consequences of these provisions, while significant, were intended. It is not within this Court's power to change that language.

Additionally, to the extent there is any ambiguity with the statutory language, I would find in favor of Spectrum based on the principle of interpretation that "[a] taxing statute must be construed most strongly and strictly against the government, and if there is a reasonable doubt as to its construction or application to a particular case, the doubt must be resolved in favor of the taxpayer." *McNeil–PPC, Inc. v. Commonwealth,* 575 Pa. 50, 63, 834 A.2d 515, 522 (2003) (alteration in original) (quoting *Skepton v. Borough of Wilson,* 562 Pa. 344, 350, 755 A.2d 1267, 1270 (2000)).

For these reasons, I must respectfully dissent.

Judge SMITH–RIBNER joins in this dissenting opinion.

---

1. Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. §§ 8106.1–A through 8112–A.